UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAMIR BATISTA,

                        Plaintiff,

            -v.-

CITY OF NEW YORK, DETECTIVE
MICHAEL LECLAIR, *Shield No. 5045*,
DETECTIVE JOHN MCSHERRY, *Shield
No. 2484*, DETECTIVE CARLOS
PAGAN, *Shield No. 2218*,

                        Defendants.

17 Civ. 1994 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Shamir Batista, proceeding *pro se*, brought this action under 42

U.S.C. § 1983 against the City of New York[1] and New York City Police

Department ("NYPD") Detectives Michael Leclair, John McSherry, and Carlos

Pagan (Leclair, McSherry, and Pagan, together, "Defendants"), alleging that

---

[1]   Plaintiff's Complaint named the New York City Police Department (the "NYPD"), and not the City of New York, as a defendant in this matter. (Complaint ("Compl." (Dkt. #2))). On March 21, 2017, this Court entered an Order substituting the City of New York in place of the NYPD, because an agency of the City of New York is not an entity that can be sued. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins* v. *City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson* v. *City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). Here, Plaintiff has presented no evidence of a municipal policy supporting or condoning the use of excessive force. *See Monell* v. *Dep't of Social Servs of the City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also Connick* v. *Thompson*, 563 U.S. 51, 60 (2011) (noting that municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law"); *accord Allen* v. *Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (summary order); *Costello* v. *City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011). Accordingly, the Court grants summary judgment in favor of the City of New York.

Defendants used excessive force against him in the course of arresting him. Before this Court is Defendants' motion for summary judgment, in which Defendants argue that: (i) neither McSherry nor Pagan was present at the time of the arrest; (ii) Leclair's use of force was not excessive; and (iii) even if Leclair's use of force were found to be excessive, he is protected from liability under the doctrine of qualified immunity. For the reasons that follow, the Court grants summary judgment in favor of McSherry and Pagan, because there is no evidence that either was present when Plaintiff was arrested. Construed in the light most favorable to Plaintiff, however, the record discloses genuine disputes of material fact as to whether Leclair's use of force was excessive and whether Leclair is entitled to qualified immunity. Accordingly, the Court denies summary judgment as to Leclair on this point.

## BACKGROUND[2]

### A.  Factual Background

On November 1, 2016, the NYPD's 34th Precinct issued a felony Active Investigation Card ("I-Card"), identifying Shamir Batista as a suspect in an

---

[2]   The facts stated herein are drawn from Plaintiff's Complaint, Defendants' Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1" (Dkt. #76)), and Plaintiff's deposition testimony ("Pl. Dep." (Dkt. #84)). The Court also draws facts from certain exhibits attached to Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp., Ex. [ ]" (Dkt. #79)), and the deposition transcript of non-party witness Kiara Ortega ("Ortega Dep." (Dkt. #85)). Citations to Defendants' Rule 56.1 Statement incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d).

For ease of reference, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment is referred to as "Def. Br." (Dkt. #78); Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment as "Pl. Opp." (Dkt. #79); and Defendants' Memorandum of Law in Further Support of Their Motion for Summary Judgment as "Def. Reply" (Dkt. #82).

assault by slashing against one victim and a gunpoint robbery of a second victim. (Def. 56.1 ¶ 1). On November 3, 2016, the 30th Precinct issued an I-Card identifying Plaintiff as a suspect in the same two crimes. (*Id.*). These I-Cards warned that Plaintiff was armed and dangerous. (*Id.* at ¶ 2). Sometime between November and December of 2016, Plaintiff became aware that the NYPD was searching for him. (*Id.* at ¶ 3). In consequence, Plaintiff deliberately avoided contact with police officers to avoid detection. (*Id.* at ¶ 4).

On January 12, 2017, Detective Leclair and two other officers were searching for Plaintiff in the Washington Heights neighborhood of upper Manhattan. (Def. 56.1 ¶ 5). At around 3:00 p.m. that day, Plaintiff and his girlfriend were shopping in a shoe and clothing store in Washington Heights, when they were approached by two plainclothes police officers. (*Id.* at ¶¶ 6, 7). Plaintiff believed the two officers were going to cause him harm and took a defensive stance. (*Id.* at ¶¶ 7, 8). According to Plaintiff and Ortega, the officers did not identify themselves as policemen. (Pl. Dep. 59:21-60:1; Ortega Dep. 21:10-12). The two officers, neither of whom was Leclair, attempted to restrain Plaintiff in order to put him under arrest and, in the process, took Plaintiff to the ground. (Def. 56.1 ¶ 9). Plaintiff described the officers as having tackled him to the ground. (Pl. Dep. 37:17-24).

Once on the ground, a physical struggle ensued between Plaintiff and the two officers. (Def. 56.1 ¶ 10). What occurred during that struggle is disputed: Defendants claim that the officers attempted to place Plaintiff's arms behind his back to put handcuffs on him. (*Id.*). Plaintiff testified that one officer

began punching him in the face, and that he attempted to move his hands from behind his back to shield his face from the blows. (Pl. Dep. 41:10-17, 42:22-44:4, 49:9-18, 53:13-25). Plaintiff explained, further, that he was unable to wrest his arms from behind his back because multiple officers were restraining him. (*Id.* at 54:1-20). Ortega testified that, though she had an obstructed view of the altercation, she also believed Plaintiff was being punched in the face, based on the way the officers were moving their arms. (Ortega Dep. 26:14-23, 32:23-33:2). Plaintiff heard one of the officers order him to "stop resisting." (Def. 56.1 ¶ 12). But Plaintiff testified that he was being punched in the face even as that order was issued. (Pl. Dep. 58:21-25). And after the punches to his face had stopped, Plaintiff's reaction was to try and shield his head from further blows. (*Id.* at 53:15-25). Plaintiff cannot identify which officer punched him in the head or which officer told him to stop resisting. (*Id.* at 46:7-17, 85:7-15).

Leclair, who Defendants assert was not yet present in the store, received a radio call for backup assistance from an officer inside the store. (Def. 56.1 ¶ 13).[3] Leclair rushed to the store; upon entering, he observed multiple officers attempting to restrain Plaintiff as he was twisting his body, flailing his arms, and kicking his legs, making it difficult for the officers to handcuff Plaintiff. (*Id.* at ¶ 15). Ortega also testified that she saw Plaintiff "wiggling" his legs and feet,

---

[3]     Plaintiff does not concede that Leclair entered the store after he had been tackled to the ground, nor does he concede that Leclair was not engaged in the physical struggle that followed. But Plaintiff cannot affirmatively identify which officers were involved in the struggle. (Pl. Dep. 46:1-17).

as multiple officers were on top of him. (Ortega Dep. 28:18-29:14). But Ortega claimed that Plaintiff was not resisting arrest; the officers were hitting Plaintiff, but he was not fighting back. (*Id.* at 32:12-22).

Leclair recalled warning Plaintiff that if he did not stop resisting arrest, he would be tased. (Def. 56.1 ¶¶ 17, 18). Plaintiff continued to resist, causing Leclair to deploy the taser. (*Id.*). Plaintiff, for his part, testified that when he heard this warning, he shouted back that he had been punched in the face. (Pl. Dep. 47:21-48:7). Plaintiff further recalled that his arms were already behind his back when he was hit by the taser. (*Id.* at 54:1-20).

The record is unclear regarding whether the prongs of the taser penetrated Plaintiff's skin or merely latched on to Plaintiff's jacket. (*Compare* Def. 56.1 ¶ 19, *with* Pl. Opp., Ex. B). Aside from the deployment of the taser, Leclair testified that he did not use any force against Plaintiff. (Def. 56.1 ¶ 20). The officers were then able to place Plaintiff under arrest, during which they recovered a knife from his person. (*Id.* at ¶ 24).

Once Plaintiff was in custody, he was taken to Columbia Presbyterian Hospital. (Def. 56.1 ¶ 25). Plaintiff's medical records note that his only injury was an abrasion on his right cheek. (*Id.*). Plaintiff was prescribed Tylenol for his injuries. (*Id.* at ¶ 26). Aside from temporary discomfort, Plaintiff was not physically injured by the taser. (*Id.* at ¶ 27).

After Plaintiff was discharged from the hospital, he was taken to the 30th Precinct for processing. (Def. 56.1 ¶ 28). En route, Plaintiff asked Leclair why he had been assaulted by one of Leclair's colleagues. (*Id.* at ¶ 22). According

to Plaintiff, Leclair appeared "dumbfounded," as if he had no idea that that had occurred. (*Id.* at ¶ 23). Plaintiff's first recollection of seeing Detectives Pagan and McSherry on January 12, 2017, was at the 30th Precinct. (*Id.* at ¶ 28). Neither Pagan nor McSherry was present when Plaintiff was arrested; they had not started their tours of duty for the day at the time of the arrest. (*Id.* at ¶ 29). Pagan and McSherry did not use any force against Plaintiff. (*Id.* at ¶ 30).

Plaintiff was arrested for: (i) robbery, stemming from an incident that occurred on or about November 2, 2016; (ii) gang assault, stemming from an incident that occurred on or about October 26, 2016; and (iii) resisting arrest and obstruction of governmental administration stemming from the January 12, 2017 arrest at issue in this case. (Def. 56.1 ¶ 31). The day after Plaintiff's arrest, he was taken into custody at Rikers Island, where the only medical need for which he sought relief was withdrawal from narcotics. (*Id.* at ¶ 32).

On December 6, 2017, Plaintiff pleaded guilty to disorderly conduct in satisfaction of criminal charges relating to the altercation on January 12, 2017. (Def. 56.1 ¶ 33). Plaintiff separately pleaded guilty to the charges against him for robbery and assault. (*Id.* at ¶ 34).

## B.    Procedural Background

Plaintiff filed his Complaint in this action on March 17, 2017. (Dkt. #2). On February 8, 2018, the Court stayed the case pending further developments in Plaintiff's underlying criminal case in state court. (Dkt. # 32). On August 1, 2018, after the criminal case had been resolved, the Court lifted the stay. (Dkt.

#38).  On August 16, 2019, Defendants filed a letter motion seeking leave to file a motion for summary judgment.  (Dkt. #66).  The Court granted Defendants' letter motion on August 27, 2019, and set a briefing schedule for Defendants' anticipated motion for summary judgment.  (Dkt. #67).  On October 18, 2019, Defendants filed their motion for summary judgment and supporting papers, including a Local Rule 56.1 Statement of Undisputed Facts.  (Dkt. #74, 75, 76, 77, 78).  On December 30, 2019, Plaintiff filed a declaration in opposition to Defendants' motion.  (Dkt. #79).  The motion became fully briefed when Defendants filed their reply brief on January 30, 2020.  (Dkt. #83).

## DISCUSSION

**A. Applicable Law**

### 1. Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[4] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v.

---

[4]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).   In determining whether there are genuine issues of material fact, courts are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry* v. *Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quotation omitted).

 "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted).   But where "the burden of proof at trial would fall on the nonmoving party," the moving party can shift the initial burden by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Soc'y, LLC* v. *Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).   If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted).   The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In deciding a motion for summary judgment, "a district court generally 'should not weigh evidence or assess the credibility of witnesses.'" *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Hayes* v. *N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). But to that general rule, the Second Circuit has recognized an exception:

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys*, 426 F.3d at 554 (internal citation omitted) (quoting *Anderson*, 477 U.S. at 252). In this rare setting, a court considering a summary judgment motion may make credibility determinations. *See SEC* v. *Jankovic*, No. 15 Civ. 1248 (KPF), 2017 WL 1067788, at *8 (S.D.N.Y. Mar. 21, 2017). Even then, the Second Circuit has cautioned that, "[i]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete." *Jeffreys*, 426 F.3d at 555 n.2 (emphasis and citation omitted). Instead, such credibility assessments are to be reserved for "extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility." *Rojas*, 660 F.3d at 106 (citation and quotation marks omitted). A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the

evidence presented." *Simpson* v. *City of New York*, 793 F.3d 259, 265 (2d Cir. 2015).

### 2. Motions for Summary Judgment in *Pro Se* Cases

In a *pro se* case, the court must take an additional step and liberally construe the *pro se* party's pleadings "to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

This task has been complicated by Plaintiff's imperfect compliance with Local Rule 56.1. Under that rule, a movant is required to identify admissible evidence in support of each factual assertion in his or her Rule 56.1 statement. *See* S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant … pursuant to Rule 56.1(a) … must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Conversely, a nonmovant seeking to controvert these factual assertions must also cite to admissible evidence, and where properly supported facts in a Local Rule 56.1 statement are denied with only conclusory assertions, the court will find such facts to be true. *See id.*; *id.* at 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Plaintiff has not filed specific objections or admissions in response to Defendants' 56.1 Statement. He has submitted only an eight-paragraph

declaration, along with seven exhibits that might, if liberally construed, express disagreement with a few of Defendants' proffered facts. (*See* Pl. Opp.). In response to the Court's requests, Defendants submitted the full transcripts of Plaintiff's deposition and Ortega's deposition. (*See* Pl. Dep.; Ortega Dep.). The testimony contained in these transcripts establishes that Plaintiff disagrees in certain key respects with the facts as laid out in Defendants' Rule 561. Statement.

"*Pro se* litigants are ... not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear*, 373 F.3d at 246). Nevertheless, even where there is incomplete compliance with the Local Rules, a court retains discretion "to consider the substance of the plaintiff's arguments." *Id.* (citing *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted))); *see also Hayes* v. *Cty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record."). To be fair to all parties, the Court will rely principally on its own assiduous review of the record.

### 3. Excessive Force in the Fourth Amendment Context

"Claims that law enforcement officers have used excessive force ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham* v. *Connor*, 490 U.S. 386, 395 (1989). A use of force violates the Fourth Amendment if the police officer's conduct is "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Cruz* v. *City of New York*, No. 15 Civ. 2265 (PAE), 2017 WL 544588, at *7 (S.D.N.Y. Feb. 8, 2017) (quoting *Maxwell* v. *City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation omitted)).

"[A] *de minimis* use of force will rarely suffice to state a Constitutional claim." *Romano* v. *Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "[T]he reasonableness question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Mickle* v. *Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (quoting *Graham*, 490 U.S. at 397). To aid in this inquiry, courts are directed to consider "at least three factors," known as the *Graham* factors: "[i] the nature and severity of the crime leading to the arrest, [ii] whether the suspect pose[d] an immediate threat to the safety of the officer or others, and [iii] whether the suspect was actively resisting arrest or

attempting to evade arrest by flight." *See Tracy* v. *Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (*citing Graham*, 490 U.S. at 396). The analysis involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Figueroa* v. *Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham*, 490 U.S. at 396 (internal quotation marks omitted)).

In sum, for an officer to be "grant[ed] summary judgment against a plaintiff on an excessive force claim ... no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert* v. *Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)). In other words, for an officer to prevail at the summary judgment stage on a claim of excessive force, the evidence must demonstrate that "no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon* v. *Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

### 4. Qualified Immunity

Qualified immunity protects officials sued for action taken in the course of their official duties from liability for civil damages "unless [the] plaintiff pleads facts showing [i] that the official violated a statutory or constitutional right, and [ii] that the right was 'clearly established' at the time of the challenged conduct." *Ricciuti* v. *Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 735 (2011)). The Supreme Court has "lately emphasized the breadth of qualified immunity protection,"

particularly with regard to the clearly established prong. *Francis* v. *Fiacco*, 942 F.3d 126, 145-46 (2d Cir. 2019) (citing *City of Escondido* v. *Emmons*, — U.S. —, 139 S. Ct. 500, 503 (2019) (per curiam)).  While the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White* v. *Pauly*, — U.S. —, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks, citation, and brackets omitted).  That precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia* v. *Wesby*, — U.S. —, 138 S. Ct. 577, 590 (2018).  At the summary judgment stage, a claim may be dismissed on qualified immunity grounds only when a court finds that an official has met his or her burden of demonstrating that no rational jury could find these two prongs to be satisfied.  *Coollick* v. *Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).

**B.    Analysis**

Plaintiff's Complaint alleges that Defendants violated his Fourth Amendment right to be free from excessive force during the course of an arrest. (*See generally* Compl.).  And while the Complaint alleges that Leclair struck Plaintiff in the face multiple times during the course of the arrest, it includes no specific allegations against McSherry and Pagan.  (*Id.*).  The evidence exchanged during discovery reveals conduct by Leclair (the specifics of which are disputed), but no conduct by McSherry and Pagan.  As such, Defendants have moved for summary judgment on the bases that: (i) no evidence suggests

that McSherry and Pagan were present at the time of the arrest or that they used any force against Plaintiff; (ii) Leclair's use of force was not excessive; and (iii) even if Leclair's use of force were found to be excessive, he is protected from liability through qualified immunity.

At the outset, it is worth noting that Plaintiff's submission fails to address many arguments raised by Defendants in their Rule 56.1 Statement and opening brief. However, because Plaintiff is proceeding *pro se*, the Court does not consider Plaintiff's silence to constitute a concession to any of Defendants' arguments or an abandonment of any claims Plaintiff made in his Complaint or during his deposition. *See Jackson* v. *Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014). Rather, the Court will "examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate." *Id.*

The Court first addresses Defendants' arguments concerning whether a reasonable jury could find that McSherry and Pagan used excessive force against Plaintiff. It determines that Plaintiff's claim against McSherry and Pagan must fail on the record before it. Second, the Court considers Plaintiff's excessive force claim against Leclair, and finds that a genuine dispute of material fact exists that precludes it from granting summary judgment in favor of Leclair.

### 1. The Court Grants Summary Judgment in Favor of Defendants McSherry and Pagan

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory*

v. *Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  Here, the Complaint does not allege that either McSherry or Pagan used excessive force against Plaintiff, or that they were even present at the time of his arrest.  (*See generally* Compl.).  The only evidence submitted to the Court concerning McSherry or Pagan establishes that they were, in fact, not present at the time of the alleged use of excessive force, and that they did not use any force against Plaintiff.  (Def. 56.1 ¶¶ 29, 30).  Plaintiff has failed to contest this evidence or to introduce any evidence of his own to suggest that there is a genuine dispute of material fact as to whether McSherry or Pagan used excessive force against him.  (*See generally* Pl. Opp.; Pl. Dep.).  Indeed, Plaintiff testified that he did not know if Pagan or McSherry used any force against him.  (Pl. Dep. 85:7-15).

Defendants have "point[ed] to evidence that negates [their] opponent's claims," and Plaintiff cannot point to any "record evidence creating a genuine issue of material fact."  *Salahuddin* v. *Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  On this record, no reasonable jury could return a verdict against McSherry and Pagan.  *See Anderson*, 477 U.S. at 248 (a fact is in genuine dispute only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  Thus, summary judgment is granted in favor of McSherry and Pagan.

### 2.     The Court Denies Summary Judgment as to Defendant Leclair

In the Complaint, Plaintiff claimed that Leclair hit him in the face several times during the course of the arrest, and that Leclair's partner tasered him.

(Compl. 4). Since that time, Plaintiff has acknowledged that he does not know which officer hit him in the face and has instead argued that Leclair was the officer who used the taser. (Pl. Opp., Ex. F; Def. 56.1 ¶ 21). Leclair has submitted an affidavit in which he denies having hit Plaintiff in the face, but admits that he was the officer who deployed the taser during the course of Plaintiff's arrest. (Def. 56.1 ¶¶ 19, 20). Because the evidence before the Court suggests that Leclair did not hit Plaintiff in the face, and because Plaintiff has acknowledged that he is unable to offer any countervailing evidence, the Court concludes that there is no genuine dispute of material fact on this point. (*Id.* at ¶ 21). To the extent that Plaintiff maintains a claim that Leclair violated his Fourth Amendment rights by hitting him in the face, summary judgment is granted in favor of Leclair.[5]

Whether Plaintiff's claim concerning Leclair's deployment of the taser survives the pending motion for summary judgment requires further analysis. The law is clear that a law enforcement officer may not deploy a taser against a suspect that is compliant or non-threatening. *Muschette on Behalf of A.M.* v. *Gionfriddo*, 910 F.3d 65, 71 (2d Cir. 2018) (citing *Tracy*, 623 F.3d at 96-98). Conversely, a taser may be used in the course of an arrest against a suspect who is actively resisting arrest, after a warning has been given. *Penree by*

---

[5]   At best, any allegation that Leclair was the officer who punched Plaintiff in the face would be based on mere speculation or conjecture, because Plaintiff himself cannot identify Leclair as that officer. This is insufficient to survive a motion for summary judgment. *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Penree* v. *City of Utica,* 694 F. App'x 30, 33 (2d Cir. 2017) (summary order) ("[I]t is not excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest."); *see Muschette*, 910 F.3d at 71 ("We have repeatedly concluded in summary orders that it is not unreasonable for an officer to use a taser in analogous circumstances."); *see also MacLeod* v. *Town of Brattleboro*, 548 F. App'x 6, 7-8 (2d Cir. 2013) (summary order) (same); *Crowell* v. *Kirkpatrick*, 400 F. App'x 592, 595-96 (2d Cir. 2010) (summary order) (same). Accordingly, if Leclair used the taser on Plaintiff while Plaintiff was neither resisting arrest nor posing a threat, he would have used excessive force in violation of the Fourth Amendment and, further, would have violated a clearly established right in doing so. Whether Plaintiff was resisting arrest when the taser was deployed is thus a quintessentially material fact.

After conducting an exacting review of the record, the Court concludes that this material fact is the subject of a genuine dispute between the parties. According to Defendants, Plaintiff was resisting arrest when Leclair arrived at the scene: Plaintiff was on the floor, twisting and flailing, as multiple officers attempted to restrain him. (Def. 56.1 ¶ 15). Leclair warned Plaintiff that if he did not stop resisting, he would be tased. (*Id.* at ¶ 17). Plaintiff continued to arrest, and Leclair deployed the taser. (*Id.* at ¶¶ 18, 19). The taser came in contact with Plaintiff's neck and back (Pl. Opp., Ex. B), but did not cause Plaintiff any injury aside from temporary discomfort (Def. 56.1 ¶ 27).[6]

---

[6]    As noted, the parties disagree whether the prongs of the taser penetrated Plaintiff's skin or latched on to Plaintiff's jacket. (*Compare* Def. 56.1 ¶ 19, *with* Pl. Opp., Ex. B).  At this stage in the proceeding, the Court is required to draw all inferences in Plaintiff's

Plaintiff's and Ortega's deposition testimonies paint a considerably different picture. Plaintiff testified that he was first tackled to the ground by two officers, after which several other officers arrived on the scene and held him down. (Pl. Dep. 54:24-55:2, 57:5-8). The officers were immediately able to put Plaintiff's hands behind his back. (*Id.* at 54:23-55:2, 55:23-56:3). After he was tackled to the ground, Plaintiff was repeatedly punched in the face by an officer. (*Id.* at 41:10-17, 42:22-44:4, 49:9-18, 53:13-25). Any supposed "resistance" to the officers was, according to Plaintiff, merely an effort to shield his head from those blows. (*Id.* at 55:7-17). Ultimately, Plaintiff's efforts were unsuccessful: The officers had overwhelming numbers, and were easily able to keep Plaintiff's hands behind his back throughout the altercation. (*Id.* at 54:1-20). Ortega corroborated portions of Plaintiff's account; she believed that Plaintiff was punched in the face, even though he was not resisting. (Ortega Dep. 26:14-23, 32:23-33:2).

To be sure, Plaintiff did not testify with complete precision as to whether he was being punched in the head in the seconds before the taser was deployed. (Pl. Dep. 53:6-25). But Plaintiff did claim that, after he was warned that he might be tased, he shouted that he had been punched in the face. (*Id.* at 47:21-48:7). Plaintiff further claimed that before the taser was deployed, his hands were behind his back and he had multiple officers on top of him. (*Id.* at 54:1-23).

---

favor, *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004), and thus assumes that the prongs did penetrate Plaintiff's skin.

At this stage in the litigation, the Court must accept Plaintiff's version of events. *Tracy*, 623 F.3d at 98. And if a jury were to accept this version — that Plaintiff had been punched in the face, was attempting to shield his head from further blows, and had both hands behind his back with multiple officers restraining him immediately prior to administration of the taser — it might well conclude that Plaintiff was not actively resisting arrest to warrant the use of a taser. *See Garcia* v. *Dutchess County*, 43 F. Supp. 3d 281, 293 (S.D.N.Y. 2014) (denying summary judgment to defendants due to a genuine dispute of material fact as to whether the use of a taser was excessive where, by the time the taser was used, plaintiff had been taken to the floor, was being restrained by multiple officers on the floor, and plaintiff's resistance had reduced to a more passive resistance of keeping his arms underneath his body to make it more challenging for the officers to handcuff him); *see also Tracy*, 623 F.3d at 98 ("[W]e conclude that a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force."); *Hamell* v. *City of Utica*, No. 16 Civ. 991 (GTS) (ATB), 2019 WL 1933938, at *14 (N.D.N.Y. May 1, 2019) (denying summary judgment to defendants due to genuine dispute of material fact as to whether the use of taser was excessive where plaintiff was lying face-down on the ground, held down by two officers, and may have been unable to move his hands out from under his stomach to be placed in handcuffs). On the present record, a reasonable factfinder could conclude that any effort Plaintiff made to

remove his hands from behind his back was not an attempt to resist arrest, but rather was a purely defensive maneuver intended to protect himself from being punched in the head.

The Court recognizes that, in determining whether Leclair is entitled to qualified immunity, it must evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Tracy*, 623 F.3d at 96 (quoting *Graham,* 490 U.S. at 396). Moreover, it is required to "make 'allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 397). But Plaintiff's testimony permits an inference that, before Leclair deployed the taser, he was aware that Plaintiff was being restrained by multiple officers, had both hands behind his back, had been punched in the head, and was attempting to shield his head from further blows.[7]  Thus, a jury could find that Leclair was aware that Plaintiff was not actively resisting arrest when the taser was deployed.

---

[7]     To review, a district court deciding a motion for summary judgment may only make credibility determinations in the rare instance where a plaintiff relies almost exclusively on his own testimony, and that testimony is full of internal inconsistencies or contradictions.  *See Jeffreys* v. *City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  Here, Plaintiff's testimony was consistent concerning the key facts: that he was repeatedly punched in the head by at least one officer after he had been restrained on the ground, and that he made unsuccessful attempts to shield his head from further blows.  Plaintiff's testimony is further supported by Ortega's testimony.  Thus, this is not one of the rare instances in which credibility determinations are appropriate in resolving a motion for summary judgment.

The Court concludes that a genuine dispute of material fact exists as to whether Leclair employed excessive force when he deployed the taser against Plaintiff. Moreover, Plaintiff's right to be free from the use of excessive force was, then and now, a clearly established right, such that the factual disputes identified by the Court preclude qualified immunity as a matter of law. *See Coollick*, 699 F.3d at 219. Summary judgment is therefore denied as to the issue of whether Leclair's use of the taser against Plaintiff constituted excessive force.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court grants summary judgment as to Defendants McSherry and Pagan, who are hereby terminated as parties to this matter. The Court denies summary judgment as to Defendant Leclair on the limited issue of whether or not he used excessive force in deploying the taser against Plaintiff.

The parties are further ORDERED to appear for a pretrial conference on **May 8, 2020**, at **11:00 a.m.** At the appointed date and time for the conference, the Warden or other official in charge of Great Meadow Correctional Center shall produce prisoner Shamir Batista, Identification No. 18A3248, at a suitable location within the Correctional Center equipped with a telephone, for the purpose of participating by telephone in the conference with the Court and defense counsel in the above referenced matter. At the appointed time, the parties shall call **(888) 363-4749** and enter access code **5123533**. Please

note, the phone conference line will not be available prior to 11:00 a.m.

Counsel for Defendants must (i) transmit this Order to the Warden forthwith; (ii) contact the Correctional Center forthwith to arrange the call and to determine the telephone number at which Plaintiff will be reachable at the above time and date; and (iii) telephone the Court with Plaintiff on the line at the time and date of the conference.

     SO ORDERED.

Dated:     April 3, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by first class mail to:*
Shamir Batista
#18A3248
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821